### In re DE LANCEY STABLES CO.

(District Court, E. D. Pennsylvania. May 27, 1909.)

No. 2,834.

1. BANKRUPTCY (§§ 114, 117*)—INVOLUNTARY PROCEEDINGS—SALE OF PROPERTY PENDING PROCEEDINGS—DISPOSITION OF FUND ON DISMISSAL OF PETITION.

Where from the face of a petition in involuntary bankruptcy it appears that the defendant is a mercantile or trading corporation and subject to bankruptcy proceedings, the court obtains complete prima facie jurisdiction, not only to inquire into and determine the issues raised on the petition, but also to preserve the property of the alleged bankrupt, and as a means to that end, when necessary, to appoint a receiver and cause the property to be converted into money; and the expense of so doing is properly chargeable against the fund, even though the court afterward dismisses the petition. It is also the duty of the court to distribute the remainder of the fund, which thus came rightfully into its possession, so as to protect, as far as possible, the rights of those who had liens on the property which they might have enforced but for the court's action.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. §§ 114, 117.*]

2. LANDLORD AND TENANT (§ 248*)—DISTRAINT FOR RENT—NATURE AND PRIORITY OF LANDLORD'S LIEN.

Under the law of Pennsylvania goods and chattels on demised premises, whether the property of the lessee or a subtenant, are under a quasi pledge to the landlord for rent, and when he has exercised his right of distraint his lien is superior to that of an execution creditor of the owner.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1010, 1011; Dec. Dig. § 248.*]

In Bankruptcy. On petition to distribute fund.

---

John J. McDevitt, Jr., Chapman & Chapman, and Charles F. Warwick, for De Lancey Stables Co.

Frederick J. Shoyer, for Gibney & Bro.

Walter Biddle Saul and Edwin O. Michener, for Eighth Nat. Bank.

Howard M. Long, for receiver.

Henry A. Hoefler, for landlords.

J. B. McPHERSON, District Judge. The questions for consideration arise upon the following facts:

On May 16, 1907, Gibney & Bro. obtained a judgment against the De Lancey Stables Company in the common pleas of Philadelphia county, and on May 29th issued execution thereon. A levy was made by the sheriff on June 8th, and a sale of the corporation's personal property was advertised for June 18th. In July, 1906, the real estate afterwards occupied by the stables company had been leased to John J. McDevitt, Jr., for five years from September 10, 1906, at the annual rent of $4,000, payable in monthly installments of $333.33 in advance on the 10th day of each month. On May 10, 1907, one month's rent was unpaid, and on May 29, 1907, the landlords issued a distraint to a constable against McDevitt and against the goods and chattels on the leased premises. These goods and chattels were then in the possession of the stables company, which (it is said) was occupying the leased premises without the knowledge or consent of the landlords. The costs incurred by the distraint amounted to $26.34. On June 10th another month's rent became due and payable, and this also was not paid. On June 15th a petition in bankruptcy was filed against the stables company, averring that the corporation "was principally engaged in the livery stable business, buying and selling horses and feed," and on June 17th a receiver was appointed, who took possession of the premises and of the personal property thereon. On the same day a restraining order was issued against both the execution and the distraint. On June 19th the District Court ordered the personal property to be sold as perishable, and on July 8th a sale was had, which was afterwards confirmed. On July 6th the stables company filed an answer to the petition in bankruptcy, denying that the company had been "principally or at all engaged in buying and selling horses and feed," and asking for a trial. This was afterwards had, and on January 9, 1908, the court found as a fact that the stables company was not principally engaged in any trading or mercantile business, and entered a decree dismissing the petition. The receiver continued to hold in his hands the fund derived from the sale of the personal property, and on June 23d the Eighth National Bank issued an attachment execution out of the common pleas of Philadelphia county upon a judgment recovered against the stables company on March 30, 1908, and summoned the receiver as garnishee. In September the bank asked for judgment against the receiver, but the court of common pleas refused the application. On July 20th the receiver filed an account in the District Court, claiming credit for various payments and showing a balance in his hands of $1,211.64. It is this sum

that the court is asked to distribute, and the petition calls for the decision of several questions.

First of all, the objection is made that the court has no jurisdiction over the fund and can do nothing with it except turn it over to the stables company. This position seems to be based upon a misapprehension. The court obtained complete prima facie jurisdiction of the proceeding as soon as the petition was filed. Upon the face of that paper the stables company appeared to be a trading or mercantile corporation. Its principal business was averred to be "the livery stable business, buying and selling horses and feed"; and, if this averment had been sustained by the proof, an adjudication would have followed. Without regard to the proof, however, the averment quoted was sufficient to give the court jurisdiction to inquire into the matter, and to determine whether or not the corporation belonged to a class against which a petition in bankruptcy may be filed. It was not the case where upon the face of a petition it is clear that the bankrupt belongs to an excepted class; for example, a transportation company or a railroad company. In such a proceeding any action attempted by the court would be wholly void, for no jurisdiction ever attaches—the petition is coram non judice. But where there is an apparent right to file the petition, jurisdiction undoubtedly exists—that is, the right to hear, inquire, and determine—although the inquiry may result in a finding that the averments of the petition are not true, and that for this reason the proceeding can go no further. Therefore, as jurisdiction against the stables company existed—prima facie a trading or mercantile company—it follows that the court had a right to preserve the property, and, as means to that end, to appoint a receiver, and also to turn the goods and chattels into cash. This last step was necessary, for the cost of keeping and feeding the horses would soon have exhausted their value. Having, therefore, exercised the undoubted power of caring for the property and of transforming it into money, the expenses of so doing are properly chargeable against the fund, and, as there is no attack upon the reasonableness of the credits asked for in the receiver's account, these credits will be allowed.

But it is urged that, even if so much be conceded, the court can do no more. It may perhaps have had prima facie jurisdiction of the corporation and of the subject-matter, and may therefore be justified in allowing the receiver's expenses, but this is the limit of its power; the balance must be returned to the stables company, and the claimants must be left to such remedies as they may possess. This argument, I think, overlooks two or three important features of the situation. I agree that, if the property of the stables company had remained unchanged in kind, the duty of the District Court would be discharged by returning it to the sheriff and the constable, and leaving all parties in interest precisely where the bankruptcy proceedings found them. But this cannot now be done. The personal property has become money, and, as this sum came rightfully into the possession of the bankruptcy court, its character as a court of equity requires it to protect the rights of all claimants to the money as carefully as possible. The fund is to be regarded precisely in the same light as if the property that produced it

were still in the custody of the receiver, and, in my opinion, the court is bound to see that the execution creditor and the landlords suffer no preventable harm from the restraining orders and from the sale of the property.

From this point of view it is clear, I think, that the landlords are entitled to be paid in full. This is the effect of the decision in Re West Side Paper Co., 20 Am. Bankr. Rep. 660, 162 Fed. 110, 89 C. C. A. 110, whether the personal property on the premises belonged to the stables company or to McDevitt (whose claim will be considered in a moment). In either event it would be liable to distress. It is therefore ordered that the two months' rent, with interest and the constable's costs, be paid in full by the receiver to the landlord.

The execution of Gibney & Bro. is next to be considered. When the restraining order was issued, these creditors had an undoubted prima facie lien upon what appeared to be the personal property of the stables company, and, if there were no dispute about the true ownership of the property, this execution should also be paid in full. But there is such a dispute, as appears from Judge Holland's order of July 10, 1907, which confirmed the receiver's sale, "subject to any right of lien on the fund derived from the said sale which J. J. McDevitt may have and establish, and without prejudice to any rights or claims of the said J. J. McDevitt in and to said property sold." This claim has never been heard, and, of course, the claimant is entitled to an opportunity to present his contention to the court. It is manifest, therefore, that there are four parties interested in the controversy, namely, the stables company, J. J. McDevitt, Jr., Gibney & Bro., and the Eighth National Bank. If the balance of the fund remaining after the landlords are paid is the property of the stables company, it should first be awarded to Gibney & Bro., and afterward to the Eighth National Bank. If the balance belongs to McDevitt, it should be awarded to him. I shall therefore treat McDevitt's answer that was filed on July 6, 1907, as a sufficient, although informal, statement of his claim, and will hear the controversy arising thereon on Friday morning, June 4th, at 10 o'clock, when the parties may produce their witnesses and may proceed with the argument of the case.