## In re ELK BROOK COAL CO.

(District Court, M. D. Pennsylvania. November 21, 1919.)

### No. 3743.

BANKRUPTCY ⬯255—JURISDICTION OVER LEASEHOLD PROPERTY AND FORFEITURE OF LEASE.

Where leasehold property of a bankrupt comes into possession of the bankruptcy court could before any action by lessor to forfeit the lease under its terms for past defaults, that court has jurisdiction over the property and to determine the lessor's rights therein; but a forfeiture should not be restrained, unless lessor's just claims can be fully met and his rights protected in administration of the bankrupt estate, nor unless, after satisfying such claims, something may probably be realized for general creditors.

In Bankruptcy. In the matter of the Elk Brook Coal Company, bankrupt. On petition of trustee to restrain forfeiture of lease. Denied.

Leigh M. Morss, James E. Burr, and Frederick K. Tracy, all of Scranton, Pa., for lessors.

Wallace C. Moser, of Scranton, Pa., for trustee.

WITMER, District Judge. The trustee of the Elk Brook Coal Company, bankrupt, seeks to restrain the lessors in a certain coal lease, enjoyed by the bankrupt and constituting its principal asset, from enforcing under the terms of the lease a forfeiture thereof, for alleged default in failing to pay the royalties covenanted to be paid on coal mined by the lessee from the leased premises during a period of three months prior to bankruptcy, and failure also to pay certain taxes likewise covenanted to be paid by the lessee.

The matter comes up for determination upon petition and answer, without testimony; the controlling facts being substantially undisputed. The leasehold interest vested in the bankrupt was acquired by a certain coal lease dated the 4th day of December, 1914, executed by Merilla E. Morss et al., as lessors, to Charles E. Bradbury, as lessee, duly assigned to the bankrupt, leasing, on a royalty basis, all the merchantable and minable coal under and upon certain tracts of land therein described. By the sixth paragraph of the lease it was provided that the lessee should pay a minimum royalty of $50 per month during the life of the lease, whether coal was mined or not. By the eighth paragraph it was provided that the lessee should pay all taxes and assessments of every kind and description assessed against the surface as well as the coal, whether removed or in the vein. By the eleventh paragraph it was provided, inter alia, as follows:

"Said lessee covenants and agrees, further, that if he fails to prosecute vigorously the work of the necessary preparation for mining of said coal for a period of 60 days after the signing of said lease, or shall fail to pay any installment of royalty for 30 days after the same shall become due and without demand by said lessors, or shall cease and discontinue mining for a period of 6 months, not being excused under clause 10 herein, or shall not keep and perform any of the covenants and agreements herein required of him, or suffer any proceeding in bankruptcy to be taken against him, or shall make any as-

signment for creditors, then, and on the occurrence of any such event said lessors may at once, on written notice to said lessee, terminate and annul this lease, and thereupon this lease shall become null and void. And said lessors may resume possession of, and may re-enter the said premises and mines without legal process and at their option, and take possession of all the railroad tracks, cars, and all other improvements and all personal property in the mines or on the surface, as their own property, and no such improvements or personal property shall thereafter be removed by said lessee after reentry for such cause."

The Elk Brook Coal Company, now bankrupt, entered into possession of the leased property under the terms of the lease and commenced the mining, preparation, and marketing of coal. Subsequently it executed a trust mortgage in favor of the Scranton Trust Company, trustee, to secure a certain series of bonds issued, and continued its mining operation until December 27, 1918, when an involuntary petition in bankruptcy was filed against it in this Court. On January 13, 1919, a receiver was appointed to take charge of the property and assets of the bankrupt. Later, in April, 1919, the company filed in this court a voluntary petition in bankruptcy, upon which an adjudication was duly entered. May 25, 1919, pursuant to a petition of the petitioners in the original involuntary petition, the company was adjudged an involuntary bankrupt. In the meantime, February 14, 1919, the receiver having presented his petition, an order was secured authorizing the issuing of receiver's certificates in the sum of $2,000 to raise funds, one of the express purposes whereof was to pay the royalties accruing under said coal lease, so as to prevent a forfeiture. It appears that the receiver sold these certificates to the amount of $1,000.

After the involuntary petition in bankruptcy was filed the bankrupt was indebted to the lessor for royalties on coal mined by it for the months of October, November, and December, 1918. Since the cessation of mining operations—that is, since January 1, 1919—minimum royalties have been accruing at the rate of $50 per month. The bankrupt also failed to pay the taxes assessed for the year 1918. None of these sums have since been paid. On May 24, 1919, subsequent to the adjudication and the election of a trustee, the lessors entered upon the demised premises and demanded from the trustee payment of the past-due royalties and compliance with the other conditions of the lease, which demand was refused by the trustee. The lessors thereupon declared the lease forfeited and took possession of the demised property. At the same time the lessors served on the trustee a written notice and declaration of forfeiture, and 2 days later served also a copy of their declaration of forfeiture upon Charles E. Bradbury, the original lessee, and upon the bankrupt, by delivering a copy to its secretary and treasurer. A like copy of declaration of forfeiture was served upon the Scranton Trust Company, trustee for bondholders under the trust mortgage. Notwithstanding this re-entry by the lessors and declaration of forfeiture, the lessors permitted the trustee to keep and maintain certain property belonging to the bankrupt upon the demised premises until the 19th day of September, 1919, whereupon the trustee was required to remove such property. Since June 2, 1919, the lessors have maintained possession of said premises, having placed a watch-

man or caretaker thereon after the surrender by the trustee on May 24, 1919. On October 13, 1919, the trustee presented his petition seeking the restraining order enjoining the lessors from enforcing the forfeiture which is now under consideration.

On behalf of the trustee it is argued that whereas, cause for forfeiture under the terms of the lease arose prior to the adjudication in bankruptcy, yet no demand for performance was made or forfeiture declared until after the adjudication the interest and title of the bankrupt in the leasehold vested in the trustee as of the date of the adjudication; and that, by virtue of such adjudication and the proceedings in bankruptcy antecedent and subsequent thereto, the lessors were prevented by operation of law from declaring and enforcing a forfeiture of said leasehold. In other words, that the proceedings in bankruptcy operated as a caveat, preventing the lessors from interfering with the property which had passed into the custody and control of the bankruptcy court. It is further argued that it would be inequitable to permit the lessors to seize and hold the valuable improvements which had been installed and erected by the bankrupt upon the demised premises, thereby preventing an equitable distribution of the assets of the bankrupt among the several creditors. In this connection attention is called to the fact that this leasehold, with the valuable improvements erected by the bankrupt, has been mortgaged as stated to secure a bonded indebtedness in the sum of $100,000, evidenced by a series of bonds issued by the bankrupt, and that by the enforcement of this forfeiture such secured creditors, as well as the general creditors of the bankrupt, are being deprived of the only security for the indebtedness so created.

It might be well to state the conclusion that no special equity exists in favor of the bondholding creditors. At the time of the execution of the trust mortgage, the coal lease under which the bankrupt acquired its interest in the premises and property was of record. The mortgagee, as trustee for bondholders, took title, of course, expressly subject to the terms of the lease under which the bankrupt acquired its rights. There is a conclusive presumption of law that the bondholders had notice of the clause of forfeiture contained in the lease.

The only vital question in the case is whether or not the adjudication in bankruptcy operated to prevent the lessors from pursuing the remedy for default provided by the terms of the lease, to wit, the enforcement of a forfeiture. While this same question has been heretofore presented in other cases, there does not seem to be any reported decision wherein it has been fully determined. A somewhat similar question was raised in a case recently decided in this court and appealed to the Circuit Court of Appeals. This was the case of In re Midvalley Coal Co. Bankrupt, entered in this court to No. 3258 in Bankruptcy, and appealed to the Circuit Court of Appeals under the name of Campbell, Trustee, v. Spruks, 251 Fed. 815, 163 C. C. A. 649. In that case two questions were raised: First, as to the jurisdiction of the bankruptcy court; and, second, as to the right of the owners of the leased coal property to enforce a forfeiture by reason of the default of the lessee in performing the covenants contained in the lease.

In this court the case was decided in favor of the lessor owners, on both grounds; upon appeal, the Circuit Court of Appeals affirmed the judgment, holding that under the circumstances of the case the bankruptcy court was without jurisdiction, rendering it unnecessary to pass on the second question.

In some material aspects, however, that case differed from the case at bar. In that case there was very slight, if any, evidence that the property in dispute had ever come into the manual possession of the bankruptcy court, or its representatives. In the present case, the receiver, and subsequently the trustee, were in actual possession of the property up to and at the time the forfeiture was declared. Thereafter, until the petition for restraining order was presented here on October 13, 1919, the lessors had been in undisputed possession of the property. The peaceable surrender of the property by the trustee might well be treated as an election on his part to reject the leasehold as burdensome property. Having made his election, he possibly ought to be required to stand by it.

But the real vital point in dispute here appears to have never been fully and decisively determined by any appellate court. The nearest case in point is that of Lindeke v. Associates Realty Co., 17 Am. Bankr. Rep. 215, 146 Fed. 630, 77 C. C. A. 56, where it was stated:

"Where a lease of land for a long term required the tenant, a corporation, to erect an expensive building thereon, and it fails to perform its covenant, and, prior to its adjudication, it is served with a notice of the forfeiture of the lease, as therein provided, the trustee succeeds only to the rights of the bankrupt, and takes the lease cum onere, and the bankruptcy court, on the petition of the lessor, will, by decree, enforce the forfeiture and order the trustee to surrender possession of the property to the lessor."

It will be noted, however, that in that case the notice of the forfeiture was served before the adjudication, although it did not become finally operative until after the trustee went into possession. It was further said that:

"The sevice being good at the time when made upon the corporation, the subsequent adjudication of bankruptcy and the selection of trustees did not abrogate the service already made upon the corporation, or necessitate reservice on the trustees in bankruptcy. In this respect the trustees succeeded only to the rights and stead of the bankrupt * * * at the time they succeeded to the estate."

In the case of Hiscock v. Varick Bank, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945, certain securities had been pledged as collateral security with a bank. It was held that the power of sale contained in the collateral pledge agreement might be exercised between the date of the filing of the petition and the date of the adjudication in bankruptcy, since the title of the bankrupt did not vest in the trustee, by operation of law until the date of the adjudication; that the court of bankruptcy could only exercise its power to determine the value of such securities and to direct their disposition when the collateral had not already been disposed of.

In this case, as well as in the case of Lindeke v. Associates Realty Company, supra, action had been taken by the adverse party prior to

the adjudication in bankruptcy, although not fully completed until after the adjudication. The same situation existed in the cases of In re West Side Paper Co., 20 Am. Bankr. Rep. 660, 162 Fed. 110, 89 C. C. A. 110, 15 Ann. Cas. 384, and In re De Lancy Stables Co. (D. C.) 22 Am. Bankr. Rep. 406, 170 Fed. 860, where, lessors having levied under landlords' warrants prior to the date of the petition in bankruptcy, it was held that while the bankruptcy court had jurisdiction to exercise custody and control over the property levied upon, yet the landlord's lien must be satisfied in full.

Other authorities might be cited to the point that a bankruptcy court, having jurisdiction and custody and control over a bankrupt's property, is vested with jurisdiction to inquire into and determine controversies of the present nature; but it has not been declared that the bankruptcy court has authority to abrogate and nullify the rights of lien claimants, pledgees, or others having interest or title in the property in dispute. Indeed, the decisions have been the other way. Thus in the case of York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, where certain property had been sold on a conditional sale contract providing that title should remain in the vendor until the entire purchase price should be paid, it was held that the adjudication of the vendee as a bankrupt did not prevent the vendors from exercising their right to reclaim the property upon default made by the vendee. There are numerous other cases along the same line.

While it may be true, as argued by the counsel for the trustee here, that it was the duty of the lessors, before declaring a forfeiture, to secure the consent of the court thereto, yet the situation, as now presented, is the same as though the lessors had pursued that course. In other words, the matter may be treated as though the lessors were now asking this court to enforce the contract and clause of forfeiture contained in the lease. If the lessors were equitably entitled to declare and enforce a forfeiture, so that the consent of the court thereto ought to have been granted, then such consent can now be granted. If it is apparent that the only adequate remedy of the lessors is by declaring a forfeiture, then this court should grant its consent thereto. If, on the other hand, it should appear that the lessors would be fully protected in their rights, that the overdue taxes, overdue royalties, and minimum royalties will be fully paid by the continued control over the property by the trustee and the sale of the leasehold, then this court could reasonably determine that the forfeiture should not be enforced. Clearly, if by an administration of the property through the bankruptcy court, the lessors are required themselves to pay the back taxes and to suffer a loss of the overdue royalties, and the accruing minimum royalties, either or all of them—in other words, if the rights of the lessors are not to be fully protected—then the court ought to permit the lessors to pursue their only adequate remedy, to wit, the enforcement of the forfeiture.

In this connection, consideration should be given to the fact that the administration of a bankrupt estate is usually a long drawn out proceeding. In the present case taxes are accumulating and becoming charges against the property all the time, and, unless paid by some

one, the reversionary interest and title of the lessors is subject to tax sale. If the trustee is to be granted authority to make sale of this leasehold interest, then a new tenant is to be foisted on the landlords. If such new tenant, going into possession, should likewise default, then the lessors would be deprived of the possession of their property, without remuneration, for a further protracted period of time.

Moreover, it has not been shown that the leasehold has any value or equity above the amount of incumbrances there against, so that a sale by the trustee would produce any fund distributable to general creditors. It is manifest that it would be not only unfair to the lessors, but would likewise be of no advantage to the general creditors, to permit the trustee to dispose of this leasehold, unless a price could be realized from said sale sufficient to pay all incumbrances, taxes, rentals, administration costs, and expenses, and then a further sum for distribution to general creditors.

At the oral argument upon this rule, the court interrogated the counsel for the parties with reference to the marketability of this leasehold interest at a trustee's sale, and the prospect of realizing therefrom any fund above the amount of incumbrances against the property. It was thereupon stated by counsel that the mortgage bondholders had been afforded an opportunity by the lessors to meet the delinquencies of the bankrupt and thereby save a forfeiture of the property, but that they declined and refused to advance the necessary moneys to accomplish the purpose, and it was further practically conceded that by a trustee's sale of the property no one would be benefited, except such bondholding creditors.

Under these circumstances, there would seem to be a doubtful propriety and lack of equity in ousting the lessors and permitting the trustee to proceed to sell the property, in the hope of realizing anything for the unsecured creditors. If no benefit or advantage is to accrue to general creditors, then, as heretofore suggested, the trustee would be warranted in rejecting the leasehold as burdensome property. If the bondholding creditors have any rights which are being prejudiced, then they have a remedy by a plenary suit.

Under the circumstances, I am of the opinion that the petitioning of the trustee has failed to show that the enforcement by the lessors of said forfeiture operates inequitably and oppressively against the rights and interests of the general creditors whom he represents, and that therefore the rule to show cause why a restraining order should not be granted should be discharged, without prejudice to the right of any party adversely affected, to proceed by a plenary suit.

It is accordingly so ordered.