## GERSTEL v. SHAW.

### In re HENRY J. SMITH, Inc.
### No. 7313.

Circuit Court of Appeals, Fifth Circuit.
June 15, 1934.

Troy C. Davis, Arthur S. Friedman, and Aaron M. Kanner, all of Miami, Fla., for appellant.

B. R. Cisco, of Miami, Fla., and Henry P. Adair, of Jacksonville, Fla., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

On summary proceedings brought by Gerstel as trustee in bankruptcy of Henry J. Smith, Inc., the referee ordered Mary G. Shaw and her representatives to turn over to the trustee the possession of Alcazar Hotel and all the personal property in it. This ruling was reviewed before the District Judge on the grounds, among others, that Miss Shaw was an adverse claimant and entitled to plenary proceedings before the court; that she was a landlord in peaceful possession of her premises denying any outstanding lease to the bankrupt; and that, if there were such a lease, it was in default, would be burdensome to the bankrupt's estate, and the trustee had not adopted it and had no funds to make good the default. The District Judge reversed the turnover order, thinking that Miss Shaw was an adverse claimant, and, without deciding whether the claimed lease was of force, held that it would be burdensome and that the trustee could not operate the hotel at a profit under it, and ordered that he should proceed no further as to it. As to the personalty, he ordered the dismissal of the summary proceedings without prejudice to the right of the trustee on leave from the referee to file plenary suit for all or any portion of it as he might be advised, or to defend any foreclosure of the mortgage on the property. The trustee has taken an appeal as of right allowed by the District Judge, instead of applying for it to this court. It is questionable whether a judgment denying a turnover order and directing a trustee to reject a lease to the bankrupt is thus reviewable. Taylor, Trustee, v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889; Ahlstrom v. Ferguson (C. C. A.) 29 F.(2d) 515; In re Federal Photo Engraving Corporation (C. C. A.) 54 F.(2d) 628; In re Miller & Harbaugh (C. C. A.) 56 F.(2d) 141; In re Goldman (C. C. A.) 62 F.(2d) 421. But, according to the case first cited, we may in any event dispose of the questions of law presented.

The bankrupt, Henry J. Smith, Inc., once owned the Alcazar Hotel, but on April 17, 1931, conveyed it to Zalzar Corporation with all the furniture, furnishings, equipment, appliances, and fixtures of every kind on the premises, subject to a first and second mortgage. The first was to Alzar Investment Corporation to secure notes of $7,500 each falling due on the 21st day of January, February, and March of each year until 1936, when $343,100 fell due, all with 7 per cent. interest from date. About $5,000 was due on the second mortgage. Henry J. Smith, Inc., remained in possession after this conveyance and operated the hotel, as the trustee claims under a lease to it from Zalzar Corporation, dated April 23, 1931, for a term of four years, subject to the right of either party to discontinue it at the end of any year on ninety days' notice. Henry J. Smith owned both the contracting corporations and signed the lease for each as its president. The rent reserved was the payment of "all interest and amortization due on the first and second mortgages due to Alzar Investment Corporation and to Jacksonville Properties, also all taxes and licenses due on the Alcazar Hotel, and all operating expenses and repairs." It was covenanted that: "On the expiration of this lease the property is to be given up in as good order in all respects as it now is, reasonable wear and tear and damage by fire alone excepted." The furniture and fixtures were not expressly mentioned, but they were used with the hotel as a part of "the property known as the Alcazar Hotel" which was leased. Henry J. Smith, Inc., paid for considerable furnishings from time to time afterwards, but it is disputed wheth-

er they became its own property or were replacements which it was bound to make. No one except Smith knew of this lease, not even the manager of the hotel, until it was produced after the trustee was appointed. The two attesting witnesses had disappeared, and the genuineness of the transaction is contested. Assuming its genuineness, the payments promised as rent were not kept up. On February 1, 1932, there was an agreement between the lessor and lessee and the first mortgagee that the amortization payments for January, February, and March, 1932, should be extended one year on condition that certain other payments should be made to cover interest and taxes and insurance. These payments were not all made. In the summer of 1932 creditors were pressing. On August 29, 1932, a great storm damaged the hotel, so that the ceiling in forty rooms fell, and the rooms became unusable. The hotel management had no money to repair or even to clean up the débris, so that the rugs and furnishings were moulding. An involuntary petition in bankruptcy was filed September 7, 1932, and application made for a receiver. The second mortgagee, opposing a receiver, sought in co-operation with Smith to find a purchaser for the hotel. Mary G. Shaw was found. She, after inspecting the property by her representative, and being assured by Smith, by the manager of the hotel, and by the former attorney for the alleged bankrupt, that immediate possession could and would be given, on September 17th, received a deed from Zalzar Corporation (whose name had been changed to Miami Alcazar Corporation) covering the hotel and all the furniture, furnishings, equipment, and appliances of every kind in it, with covenants for a fee-simple title and for quiet enjoyment and against incumbrances except the first and second mortgages aforesaid. She was also given a letter from her grantor addressed to the manager of the hotel, stating that Henry J. Smith, Inc., as a tenant by sufferance, had been occupying the hotel under a lease agreement, but was far in default with its rental payments, and requesting that all necessary steps be taken to surrender the premises to Mary G. Shaw, to whom they had been sold. Henry J. Smith, Inc., gave her a letter addressed to the manager, stating that it was unable to pay its rent and had been so unable during the current year, and desired to return possession to the owner without litigation. Henry J. Smith, Inc., also made a written surrender to Mary G. Shaw as owner. She paid $4,000 for the deed, delivered the letters to the manager, and, taking possession, spent about $18,000 in necessary repairs to the hotel and about $19,000 for other improvements and equipment. She operated the hotel at a profit through March, 1933, of about $35,000 over actual operating expenses, but without any reserve for taxes, insurance, repairs, principal and interest on the mortgages, or managerial salary. The arrearages on the two mortgages, with the necessary repairs, amounted at that time to $104,661. The arrearage on September 20, 1932, when possession was taken, was $41,040. Meanwhile, on September 22, 1932, the alleged bankrupt answered, denying the acts of bankruptcy and demanding a jury trial. On December 16th the answer was withdrawn and adjudication had. On January 12, 1933, Gerstel was appointed receiver, and on February 11th he was made trustee. On February 23d he applied for the turnover order to the referee, who granted it on June 24th. The District Judge reversed on July 31, 1933. At the hearings the trustee testified that beside the matters in controversy he had no assets on hand or in sight except less than $100 in cash.

The trustee's contention is that, since the bankrupt was in possession of the hotel and furnishings when the petition was filed, the property was in custodia legis from that time, and the court is entitled to regain possession summarily; it being the duty of persons having claims to or against it to apply to the court for their recognition. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405; Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Board of Trade of Chicago v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533; Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645. Transfers pending adjudication from an alleged bankrupt of his property are no doubt generally at the peril of the taker. International Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866. And a surrender by a receiver without the court's authority is inoperative. Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157. On the other hand, the pendency of the petition does not hinder a pledgee from asserting his rights against pledged property. Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945. We have no doubt that a landlord may similarly enforce his right of entry against a defaulting tenant. In re Elk Brook Coal Co. (D. C.) 261 F. 445. The mere surrender by the alleged bankrupt of a leasehold estate pending his adjudication might amount to

374

nothing at the court's option; but here, assuming the validity of the contested lease, the tenant was in default both as to the mortgages and as to the repair of the premises, which were suffering for lack of repair. Giving Miss Shaw no better position than her grantor would have, she was entitled to enter under Florida law because of the default. Comp. Gen. Laws Fla. 1927, § 5398. The surrender to her was but a recognition of her right. She could not prudently wait, for the property was going to wrack, the tourist season was approaching, and the alleged bankrupt might never be adjudicated. If a trustee should be appointed and she should be disposed to waive the default, he might regard the lease as burdensome and decline to take it. Moreover, the letter written by the lessor to the lessee and delivered by her on September 17, 1932, could be taken as a notice to terminate the lease under its terms at the end of the current year, which was past at the time of the hearings. If there was in fact no lease, as Miss Shaw then understood, and now contends, the alleged bankrupt had no interest in the hotel, its possession was for the owner, and the trustee could have no just right to possess it. It is plain that Miss Shaw does not claim under the bankrupt, but adversely to him and in right of her grantor, and has exercised a right of entry which the trustee, if in possession could not justly have resisted without at least paying up the defaults. He in fact has, as the bankrupt then had, no means to do so. He does not now propose to adopt and reinstate the lease, but assumes that he would have a right to operate the hotel without doing so in hopes of making some money for the estate. In this he is in error. The judge rightly held that he is in no position to take over and reinstate the lease and should abandon his effort.

As to the personal property, it stands in the main as an appurtenance of the hotel, and was leased and sold with it. Miss Shaw claims with plausibility that none of it which has been added by the bankrupt since it deeded the hotel to Zalzar Corporation and leased it back is other than mere replacements due under the terms of the lease; that is, that as such things were bought and put in the hotel title to them vested long before the bankruptcy in the landlord, and has now passed to her. This is an adverse claim as to which the evidence at present is in conflict. She objects to a summary trial of her rights, and is entitled to plenary proceedings. The judge was right in so holding.

Judgment affirmed.